**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SAVERGLASS, INC.,

                *Plaintiff,*

   -against-                 Civil Action No. 14-5434 (WRK)

VITRO PACKAGING, LLC,

                *Defendant.*

**DEFENDANT VITRO PACKAGING, LLC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

    Pursuant to the July 17, 2015, Order endorsing the parties proposed schedule for claim construction submissions [Dkt. 30], the defendant Vitro Packaging, LLC ("Vitro"), submits this Opening Claim Construction Brief.

**I.**    <u>**Preliminary Statement**</u>

    In this action the plaintiff Saverglass, Inc. ("Saverglass") has alleged that Vitro has infringed its U.S. Design Patent D526,197 (the "'197 Patent") for a glass bottle.

    In a related proceeding Vitro has petitioned the U.S. Patent and Trademark Office ("PTO") to initiate an *Inter Partes* Review ("IPR") of the '197 Patent and declare it invalid because the glass bottle design claimed in the patent would have been obvious to a glass bottle designer of ordinary skill. 35 U.S.C. § 103; *Titan Tire Corp. v. Case New Holland, Inc*., 566 F.3d 1372, (Fed. Cir. 2009).

1

The PTO has yet to decide whether to grant Vitro's petition and initiate an IPR proceeding. However, in its response to Vitro's petition Saverglass narrowly construed the features of the '197 Patent bottle design in an attempt to distinguish it from the prior art bottles. That construction is relevant to this claim construction proceeding.

Indeed, in view of the similarity of the prior art bottles to the '197 Patent bottle design, even a narrow construction does not render the patent non-obvious. However, for the purpose of this claim construction proceeding it is respectfully submitted that the claim should be construed narrowly to include all the design features _exactly_ as depicted in the '197 Patent drawings.

For these and the reasons set forth below, it is respectfully requested that the Court adopt Vitro's proposed claim construction.

## II. __History Of This Action__

On September 16, 2014, Saverglass filed its Complaint alleging that Vitro is manufacturing and selling a glass bottle that infringes the '197 Patent. Counsel for Vitro agreed to accept service on behalf of Saverglass on November 17, 2014.

On March 26, 2015, Vitro filed a petition seeking the IPR of the '197 Patent because the bottle design is obvious in view of prior art bottles. A copy of the IPR Petition is attached as

Exhibit 1 to the Declaration of Michael Aschen ("Aschen Decl.") submitted concurrently herewith.

On June 30, 2015, Saverglass filed its Preliminary Response to Vitro's IPR Petition. A copy is attached as Ex. 2 to the Aschen Decl.

During a June 8th status conference before Magistrate Judge Tomlinson, counsel for Vitro advised the Court of the status of the IPR Petition and that, pursuant to the Patent Office Rules, a decision whether to initiate the IPR should issue no later than October 1, 2015. Vitro's counsel also advised Magistrate Tomlinson that, because the IPR could well result in invalidation of the '197 Patent, it would move to stay this action if its Petition is granted.

Vitro also suggested that the early completion of the *Markman* claim construction phase of this action could facilitate a more rapid and economical resolution of the matter. Judge Tomlinson then instructed counsel for Vitro to file a letter with the Court by June 22, 2015 setting forth its position on early claim construction, and instructed counsel for Saverglass to submit a letter with its position on the issue by July 2, 2015.

On July 7, 2015 the Court ordered the parties to appear for an Early *Markman* Hearing on September 9, 2015. [Dkt. No. 26]. On July 16, 2015, the Court endorsed the parties' proposed

scheduling order for the *Markman* proceedings. [Dkt. No. 31].
That Order directed the parties to exchange proposed claim
constructions on July 22, 2015.

Vitro's proposed construction of disputed claim elements is
attached to the Aschen Decl. as Ex. 3.[1]

Saverglass's July 22, 2015, letter concerning claim
construction, attached to the Aschen Decl. as Ex. 4, states
that:

> 1.    The claim is properly construed as the
> bottle design depicted in Figures 1-7 of the '197
> patent. Oblique surface lines that are included in the
> figures represent shading, not surface ornamentation.
>
> 2.    Saverglass does not believe that a detailed
> verbal description of the claimed design is necessary
> or appropriate.

The July 16, 2015 Scheduling Order further provides that
the parties exchange opening claim construction briefs on August
13, 2015. This opening claim construction brief is submitted by
Vitro pursuant to that Order.

## III. <u>Claim Construction of Design Patents</u>

It is now well established that "claim construction"
concerning design patents is necessary. *Alan Tracy, Inc. v.
Trans Globe Imports, Inc.*, 1995 WL 331109 (Fed. Cir. 1995).

---

[1] On August 12, 2015 Vitro delivered its amended proposed
claim constructions of disputed claim elements to Saverglass's
counsel. A copy is attached to the Aschen Decl. as Ex.4.

"[T]rial courts have a duty to conduct claim construction in design patent cases, as in utility patent cases." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) *(en banc), cert. denied*, 129 S. Ct. 1917 (2009).

In the *Egyptian Goddess* case the Federal Circuit held that district courts, as part of their claim construction function, should distinguish "between those features of the claimed design that are ornamental and those that are purely functional", and consider the "various features of the claimed design as they relate to the accused design and the prior art." *Egyptian Goddess, Inc.*, 543 F.3d at 680.

Since the *Egyptian Goddess* case the Federal Circuit has stated that:

> the [district] court first distinguished, as part of its claim construction, the ornamental aspects from the functional aspects of Richardson's design and then determined that an ordinary observer, after discounting the functional elements of Richardson's design, would not be deceived into thinking that any of the Fubar tools were the same as Richardson's Stepclaw. ("Because the court correctly construed the claim at issue ... we affirm").

*Richardson v. Stanley Works Inc.,* 93 USPQ2d 1937, 1939 (Fed. Cir. 2010).

Neither party argues that the '197 Patent prevents others from using basic functional design elements found in similar glass bottles.  Key features of the design are essential to all bottles, *e.g.*, an extraction ring, neck, sidewalls, etc.

Because design patents protect only "ornamental" designs, 35 U.S.C. § 171, any functional aspects must be "factored out" when a design patent is construed and infringement analysis is conducted. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

The Federal Circuit has explained that a district court should construe a design patent by describing the ornamental aspects of these functional elements of the design as a way of capturing its overall visual impression. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

The *OddzOn* court further noted that design patents do not protect "general design concepts" depicted in their figures. They "only protect[] the novel, ornamental features of the patented design." *OddzOn Prods., Inc.*, 122 F.3d at 1404-05; *see also Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 104 (Fed. Cir. 1996).

The '197 Patent does not allow Saverglass to prevent competitors from using the bottle's design philosophy and concepts. Doing so would improperly grant monopoly protection to an unpatentable abstract idea. *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010).

Moreover, the scope of a design claim must be viewed "in the context of the prior art", because design patents only protect "new" and "original" ornamental designs.  35 U.S.C. §

6

171; *Egyptian Goddess, Inc.*, 543 F.3d at 676. "[W]hen the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* (italics added).

Indeed, it is still the law that "[d]esign patents have almost no scope". *In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988).

Claim construction assists the fact-finder by, for example, pointing out "either for a jury or in the case of a bench trial by way of describing the court's own analysis, various features of the claimed design as they relate to the accused design and the prior art." *Id.* at 680.

Differences "that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Id.* at 678.

Moreover, when "a field is crowded with many references" relating to the design of the same type of article, a design patent's "scope of protection" is limited to a more "narrow range". *Id.* at 676 (*quoting Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

For these reasons, an infringement analysis is not a simple matter of comparing the figures of the '197 Patent to Vitro's accused bottle. Claim construction by the Court is essential to avoid jury confusion and error.

**IV.   Saverglass' Claim Construction In Response
To Vitro's Petition for _Inter Partes_ Review**

Saverglass' Preliminary Response to Vitro's IPR Petition

argues that that the '197 Patent design is not obvious and,

therefore, invalid because no combination of the prior art

designs would result in a design that has the same overall

visual appearance as the '197 Patent design. _Id._ at p. 6-7.

The Saverglass Preliminary Response included the following

drawing from the '197 Patent with the bottle's features labeled.

_Id._ at p. 7.



In its Preliminary Response, Saverglass had no difficulty

providing the following verbal descriptions of those features:

| Features of the '197 Patent Bottle | Saverglass's Proposed Constructions |
|---|---|
| Transfer Ring | "enlarged cylindrical portion at its top" |
| Neck | "substantially cylindrical" |
| Quarter-Round Transition | "a concave, quarter-round transition" |
| Flat Inclined Shoulder | "The shoulder portion defines a substantially flat surface with an inclined pitch as it transitions inward" |
| Angular Transition | "a small radius curve defining an angular transition from the sidewall" |

| Features of the '197 Patent Bottle | Saverglass's Proposed Constructions |
|---|---|
| Body With Exterior and Interior Tapered Sidewalls | "… the exterior contour of the bottle includes a body section that is tapered, with a base that is somewhat smaller in diameter than a shoulder portion." |
| Thickened Base | "the bottle includes an interior contour that is opposite the concave contour in the exterior of the base. These contours define a visible thickened portion at the base of the bottle." |
| Concave Bottom Surface | "The bottom surface of the base is contoured with a concave recess." |
| Relative Proportions | "… the relative width and height of the body section, the relative width of the body and neck sections, the relative height of the body to neck." |
| Overall Visual Impression | "…the CH No. 146 Bottle is a stouter, less elegant, appearance than that shown and claimed in the' 197 Patent." |

*Id.* at page 7.

Saverglass proffered the foregoing description in an effort to distinguish the design from the prior art.

However, its approach to claim construction is markedly different in this case. In its July 22nd proposed claim construction letter (Ex. 4 to the Aschen Decl.), Saverglass reversed direction and, unlike its effort before the PTO to narrow the scope of the claim, in this case it seeks to broaden the claim's scope, presumably to improve its infringement case, by arguing that the '197 Patent figures alone properly construe the claim, and that no verbal description "is necessary or appropriate."

"A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (internal citation omitted).

9

Saverglass should not be permitted in this proceeding to disregard the verbal description of the claim used in its IPR Preliminary Response to attempt to distinguish it from the prior art. *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) ("That which infringes, if later, would anticipate, if earlier.") (*quoting Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)).

Indeed, the '197 Patent should be construed even more narrowly than was proposed by Saverglass in its Preliminary Response because that construction still reads on the prior art discussed *infra*, as well as on products in the market today. An example of such a product from the Italian glass bottle manufacturer, Bruni Glass SPA, is shown below.



*See* http://www.bruniglass.com/en_GB/prodotti/distillati/showproduct/cla8/bot-claire-ronde-700-f-14-bt

**V.    Prior Art References Limit the '197 Patent**

The scope of the '197 Patent must be viewed "in the context of the prior art", because design patents only protect "new" and "original" ornamental designs. *Egyptian Goddess, Inc.*, 543 F.3d

at 676. The following are examples of a prior art bottles that are remarkably similar to the '197 Patent design and which suggest that an extremely narrow construction is appropriate.

1.   The Round Ink Bottle on page 54 of the 1906 Illinois Glass Company catalog[2] attached as Ex. 1002 to Vitro's IPR petition (Ex. 1 to the Aschen Decl.) and juxtaposed below with the '197 Patent bottle, has basically the same design as the '197 Patent bottle except that the main body portion is not tapered and the transfer ring portion of the neck is slightly longer.





FIG. 2

Although there is only one view, the bottle is "round," and therefore the side views and rear view would be identical. The relative proportions of the Round Ink bottle design and the '97 Patent design are compared in the following table.

_____

[2]  In its Preliminary Response, Saverglass did not contest

11

| Design Feature | '197 Patent Design | Round Ink Design |
|---|---|---|
| Main body height versus width ratio | 1.6 | 1.75 |
| Main body taper – top to bottom | 10 percent | none |
| Main body upper shoulders | square | square |
| Ratio – body height to neck height | 2.5 | 2.3 |
| Ratio – body width to neck width | 3 | 2.8 |

As illustrated in the table above, and as is evident from comparing the designs, the Round Ink Bottle design is "basically the same" as the '197 Patent bottle. *Darling*, 101 F.3d at 103.

There are, however, some differences. The '197 Patent bottle has a somewhat squarer shoulder in the transition from the top to the neck than does the Round Ink Bottle, and it has a bottom which is concave facing in both the up and down directions. The '197 Patent design also decreases very slightly in width from top to bottom, although such is not a prominent design feature. There is also a small but insignificant difference in the length of the transfer ring. Finally, the '197 Patent bottle includes a bottom with a double concave surface (both the top and bottom surfaces are concave) visible to the ordinary observer.

Two other prior art bottles, the CH No. 146 and CH No. 284 bottles illustrated below are on page 212 of the pre-1930

the fact that material submitted by Vitro were "prior art."

Illinois Glass Company catalog. *See* Ex. 1003 to Vitro's IPR
petition (Ex. 1 to the Aschen Decl.)

 

MOULD C H No. 146          MOULD C H No. 284

The CH No. 146 bottle has a cylindrical round main body
portion with a slight taper from top to bottom and a cylindrical
neck which projects upwardly from the center of the top surface.
The upper shoulder of the main body portion, similar to the '197
Patent bottle, is relatively square, so that the top of the main
body portion is relatively flat.  Because the bottle is round,
the front, side, and back views are all the same.

The CH No. 146 bottle has square shoulders which are
virtually indistinguishable from the '197 Patent bottle.  It
also has almost the same amount of top-to-bottom taper in width.

The CH No. 284 glass bottle has the same shaped transfer
ring as the '197 Patent bottle. If there is any difference
between the '197 Patent bottle and the Round Ink bottle that has
been modified to include the taper and squarer shoulders of the

CH No. 146 bottle and the transfer ring of the CH No. 284 bottle, it has to be the double concave shape of the bottom.

Except for minor dimensional variations, the double concave shape of the glass bottom in the '197 Patent bottle is the only feature which even arguably distinguishes it from the prior art.

## VI. The Scope of the '197 Patent

Claim construction of the '197 Patent should emphasize, to the extent they exist, the minor differences between the patent's design and the prior art.

Assuming *arguendo* that the '197 Patent is valid, it is respectfully submitted that in order for it to be found non-obvious over the prior art it must be construed narrowly to include the following design features, exactly as depicted in the '197 Patent drawings:

### A. Transfer Ring

The relative dimensions of the Transfer Ring are illustrated in the enhanced version of Figure 2 from the '197 Patent shown below.



Accordingly, Vitro proposes that the Transfer Ring of the '197 Patent bottle be construed to require: "An enlarged

14

cylindrical portion at the top of the neck with a height approximately one third the height of the neck."

**B. Neck**

The relative dimensions of the Neck are illustrated in the enhanced version of Figure 2 from the '197 Patent shown below.



Accordingly, Vitro proposes that the Neck of the '197 Patent bottle be construed to require: "A perfect cylinder with a height approximately 20% of the height of the bottle, and with a wall thickness that is approximately 15% of the outside diameter of the neck."

**C. Quarter-Round Transition**

The relative dimensions of the Quarter-Round[3] Transition are illustrated in the enhanced version of Figure 2 from the '197 Patent shown below.

_____

[3] Saverglass used the term "quarter round" to describe the circular curve defining the transition from the neck to the shoulder of the '197 Patent bottle design. That curve, however, is not a "quarter round" curve as the term is generally defined.



Vitro, therefore, proposes that the Quarter-Round Transition of the '197 Patent bottle be construed to require: "A concave 110° circular curve defining the transition from the neck to the shoulder that has a radius substantially larger than that of the 'Angular Transition' resulting in a noticeably curved appearance."[4]

**D. Flat Inclined Shoulder**

The relative dimensions of the Flat Inclined Shoulder are illustrated in the enhanced version of Figure 2 from the '197 Patent shown below.



---

[4] Saverglass argued in its Preliminary Response To Petition that "…the transition shown in the D'433 Patent from the body to the shoulder is essentially a quarter-round convex radius, whereas the transition shown in the' 197 Patent has a substantially smaller radius <u>giving the visual impression of a sharper transition</u>. Thus, neither the shoulder itself, nor the transitions from body to shoulder or shoulder to neck shown in the D'433 Patent are the same as that in the claim of the '197 Patent." *Id.* at 31 (emphasis added).

Accordingly, Vitro proposes that the Flat Inclined Shoulder of the '197 Patent bottle be construed to require: "A flat surface that is inclined upward from horizontal as it transitions inward and whose length is approximately the same as the diameter of the neck."

**E. Angular Transition**

The relative dimensions of the Angular Transition are illustrated in the enhanced version of Figure 2 from the '197 Patent shown below.



Vitro, therefore, proposes that the Angular Transition of the '197 Patent bottle be construed to require: "A convex 260° circular curve defining the transition from the shoulder to the sidewall that has a substantially smaller radius than that of the 'Quarter Round Transition' resulting in an angular appearance."[5]

**F. Body With Exterior and Interior Tapered Sidewalls**

---

[5] Saverglass argued in its Preliminary Response To Petition that "[n]otable differences between the CH No. 146 Bottle and the' 197 Patent include … the CH No. 146 Bottle design has a comparatively significant radius transitioning from the sidewall of the body to the shoulder portion, and then and angular transition from the shoulder to the neck." *Id.* at 33.

The relative dimensions of the Body are illustrated in the enhanced version of Figure 2 from the '197 Patent shown below.



Vitro agrees with the Saverglass description of the body of the '197 Patent bottle design, namely that "… the exterior contour of the bottle includes a body section that is tapered, with a base that is somewhat smaller in diameter than a shoulder portion." Vitro proposes, however, that the construction further require that the interior contour of the bottle is also tapered such that the thickness of the sidewall at the shoulder is approximately 50% of the thickness of the sidewall at the base.

**G. Thickened Base**

The relative dimensions of the Base are illustrated in the enhanced version of Figure 2 from the '197 Patent shown below.



Vitro agrees with the Saverglass description of the base of the '197 Patent bottle design, namely that "… the bottle includes an interior contour that is opposite the concave contour in the exterior of the base. These contours define a visibly thickened portion at the base of the bottle." Vitro proposes, however, that the construction further require that its thickness must increase by a factor of 2.5 from the middle of the base to its edge.

**H. Concave Bottom Surface**

Vitro agrees with the Saverglass description of the bottom surface of the '197 Patent bottle design, namely that "…[t]he bottom surface of the base is contoured with a concave recess." For clarity, however, Vitro proposes that the construction further require that the interior of the base is also contoured with a concave recess.

**I. Relative Proportions and**
   **Overall Visual Impression**

Vitro agrees with the Saverglass description of the relative proportions of the '197 Patent bottle design, namely that "… the relative width and height of the body section, the relative width of the body and neck sections, the relative height of the body to neck."[6] Vitro proposes, however, that the

---

[6] Saverglass argued in its Preliminary Response To Petition that "[f]rom this side-by-side comparison a number of significant differences are readily apparent, including … The

construction further require that the relative height of the transfer ring to the height of the bottle, the thickness of the bottle, and the relative dimensions of the "Quarter-Round" and "Angular Transitions" are also elements of the claimed design and that the totality of the features of the '197 Patent bottle creates an overall visual impression of an angular, light, and contemporary bottle design.

**VII. <u>Conclusion</u>**

For the foregoing reasons it is respectfully requested that the Court adopt Vitro's proposed claim construction.

Dated: August 13, 2015   **ABELMAN FRAYNE & SCHWAB**
   New York, NY

       <u>   /s/ Michael Aschen   </u>
       Jeffrey A. Schwab (JS 9592)
       Michael Aschen (MA 6336)
       Anthony J. DiFilippi (AD 7870)
       Robert Smith (RS 1248)
       666 Third Avenue
       New York, NY 10017
       (212) 949-9022

       Counsel for the Defendant

---

Round Ink Bottle transitions from the sidewall of the body to the shoulder with a pronounced radius, whereas the claimed design of the' 197 Patent presents a smaller radius giving the visual impression of a more angular transition in the patented design… [t]he transfer ring on the Round Ink Bottle is greater than 1/3 the length of the neck, whereas in the '197 Patent, the transfer ring is about 1/4 of the length of the neck… [and t]he Round Ink Bottle does not have the thickened base portion or the concave surface on the bottom of the bottle that, in part, defines the thickened base portion of the bottle, while such feature is shown in the '197 Patent. <u>The overall impression</u> created by these numerous and substantial differences is that the Round Ink Bottle is not basically the same design as that claimed in the' 197 Patent." *Id.* at 20-21.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2015, I caused a true and correct copy of the foregoing Defendant Vitro Packaging, LLC's Opening Claim Construction Brief to be served upon the attorney for the Plaintiff by first class mail addressed as follows:

> Paul Ackerman, Esq.
> **ANDREWS KURTH, L.L.P.**
> 450 Lexington Avenue
> New York, New York 10017

> ___/s/ Michael Aschen___

21