UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SAVERGLASS, INC.,

                Plaintiff,

                                  **DECISION AND ORDER**
-v.-                                   2:14-CV-5434 (WFK) (AKT)

VITRO PACKAGING, LLC,

                Defendant.
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

Saverglass Inc. ("Plaintiff") filed this action against Vitro Packaging, LLC ("Defendant") alleging infringement of U.S. Design Patent D526,197 (the "'197 Patent"). Plaintiff claims the '197 Patent shows and claims an ornamental design for a bottle that Plaintiff refers to as its "Neos" bottle. The parties dispute the claim construction of the '197 Patent. Pursuant to the parties' claim construction briefs and the one-day *Markman* hearing held on September 9, 2015, the Court construes the '197 Patent as follows:

> The '197 patent is directed to the ornamental design of a bottle as illustrated in FIGS. 1-7. Oblique lines shown on the surfaces of the bottle in FIGS. 1-7 represent shading and contour lines, not surface ornamentation.

## BACKGROUND

<u>The Parties and the Instant Action</u>

This case involves one design patent: the '197 Patent. *See* Dkt. 35-1 (the "'197 Design Patent"). Plaintiff and Defendant are competitors in the glassware market, including glass bottles. Dkt. 34 ("Pl.'s Brief") at 1. On September 16, 2014, Plaintiff filed a Complaint against Defendant alleging infringement of the '197 Patent. Dkt. 1 ("Complaint"). Specifically, Plaintiff claims Defendant's "Genesis" bottle infringes the ornamental design for Plaintiff's "Neos" bottle that is claimed in the '197 Patent. *Id.* at ¶¶ 10, 13, 16. Plaintiff further alleges the '197 Patent is valid, subsisting, and in full force and effect. *Id.* at ¶ 9. Plaintiff also alleges it holds all rights, title, and interest in the '197 Patent and has not assigned or licensed any rights to

1

Defendant. *Id.* at ¶¶ 11, 12. Plaintiff claims Defendant has imported, used, offered for sale, sold and/or sells, or caused to do the same, products throughout the United States, including within the Eastern District of New York, using bottles that infringe the '197 Patent. *Id.* at ¶ 13. Based on these facts, Plaintiff brought the following claims against Defendant: (1) patent infringement under federal law, (2) unfair competition under New York State law, and (3) unfair business practices under New York State law. *Id.* at ¶¶ 14-29.

On February 26, 2015, Defendant filed its Second Amended Answer, Defenses, and Counterclaims. Dkt. 16 ("Counterclaims"). Defendant raised the following counterclaims: (1) the '197 Patent is invalid as anticipated by prior art, (2) the '197 Patent fails to enable one skilled in the art to make and use the claimed invention, (3) if the '197 Patent is not anticipated by or obvious in view of prior art, none of Defendant's products incorporate the features that distinguish the '197 Patent from prior art, (4) none of Defendant's products infringe the '197 Patent, and (5) Defendant has not made any false claims of inventorship concerning its products. *Id.* at ¶¶ 9-29.

The '197 Patent

The '197 Patent issued to Plaintiff on August 8, 2006 from an application filed on August 25, 2004, and claims priority to a European design application that was filed on February 25, 2004. Pl.'s Brief at 3. Unlike a utility patent where the patent claims are set forth in words in numbered paragraphs at the end of the patent, a design patent is defined by its drawings. Referring to the face of the '197 Patent, the "claim" is simply stated as "the ornamental design for a bottle, as shown." *Id.* (internal citation omitted). The '197 Patent includes FIGS. 1-7, which illustrate a (1) top, side perspective view, (2) front elevation view, (3) rear elevation view, (4) right side elevation view, (5) left side elevation view, (6) top plan view, and (7) bottom plan

view of the claimed bottle design, respectively. *Id.* Each drawing also includes "oblique" shading lines. *Id.* at 4; *see also* '197 Design Patent at FIGS. 1-7. These figures comprise the claim. Pl.'s Brief at 3; *see also* '197 Design Patent at FIGS. 1-7.

Petition for *Inter Partes* Review and Request for *Markman* Hearing[1]

On March 26, 2015, subsequent to the initiation of this instant action, Defendant filed a Petition for *Inter Partes* Review ("IPR") of the '197 Patent (the "Petition") with the United States Patent and Trademark Office ("USPTO"). Dkt. 24 ("*Markman* Request") at 2. In the Petition, Defendant requested the '197 Patent be invalidated because the design is obvious in light of prior art bottle designs. *Id.* The USPTO must issue a decision granting or denying the Petition by October 1, 2015.

Accordingly, in a letter addressed to the Court on June 22, 2015, Defendant argued an early *Markman* hearing was necessary to assist the parties to prepare for the IPR. *Id.* at 2-3. Even if the USPTO does not ultimately invalidate the '197 Patent following the IPR, Defendant stated an early *Markman* hearing would narrow the scope of discovery concerning infringement and validity. *Id.* at 2.

On July 2, 2015, Plaintiff filed a letter stating an early *Markman* hearing would not be helpful to the Court and would simply waste resources. Dkt. 25 ("Opposition to *Markman* Hearing"). Plaintiff argued that any claim construction issues could be resolved and developed during fact and expert discovery and with pre-trial motion practice. *Id.* at 2-4.

On July 7, 2015, this Court ordered the parties to appear for an early *Markman* hearing on September 9, 2015. Dkt. 26 ("Order Approving *Markman* Hearing").

---

[1] "The express purpose of such a so-called *Markman* hearing is for the court to interpret the claims of a contested patent." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 415 (S.D.N.Y. 2003) (Knapp, J.) (internal quotation marks and citations omitted).

Proposed Claim Construction and *Markman* Hearing

On July 22, 2015 the parties exchanged proposed claim constructions of the '197 Patent. Dkt. 33-5 ("P's Construction"); Dkt. 33-4 ("D's Construction"). The parties failed to agree on a claim construction for the '197 Patent. Each proposed claim construction is set forth directly below.

a. Plaintiff's Proposed Claim Construction

Plaintiff proposed the following construction for the '197 Patent:

"The [']197 patent is directed to the ornamental design of a bottle as illustrated in FIGS. 1-7. Oblique lines shown on the surfaces of the bottle in FIGS. 1-7 represent shading and contour lines, not surface ornamentation."

Pl.'s Brief at 6.

b. Defendant's Proposed Claim Construction

Defendant proposed a more narrow construction of the scope of the '197 Patent. Defendant argued the '197 Patent "must be construed narrowly to include the following design features, exactly as depicted in the [']197 Patent drawings[.]" Dkt. 32 ("Def. Brief") at 14. Defendant highlighted the following design features and provided the following constructions for each:

| **Claim Terms** | **Proposed Construction** |
| --- | --- |
| Transfer Ring | An enlarged cylindrical portion at the top of the neck with a height approximately one-third the height of the neck. |
| Neck | A perfect cylinder with a height approximately 20% of the height of the bottle, and with a wall thickness that is approximately 15% of the outside diameter of the neck. |
| Quarter-Round Transition | A concave 110° circular curve defining the transition from the neck to the shoulder that has a radius substantially larger than that of the "Angular Transition" resulting in a noticeably curved |

4

| | appearance. |
|---|---|
| Flat Inclined Shoulder | A flat surface that is inclined upward from horizontal as it transitions inward and whose length is approximately the same as the diameter of the neck. |
| Angular Transition | A convex 260° circular curve defining the transition from the shoulder to the sidewall that has a substantially smaller radius than that of the "Quarter Round Transition" resulting in an angular appearance. |
| Body With Exterior and Interior Tapered Sidewalls | Defendant agrees with Plaintiff's description on page 7 of its Preliminary Response To Defendant's Petition for IPR Review the '197 Patent ("Preliminary Response") of the body of the '197 Patent bottle design, namely that "the exterior contour of the bottle includes a body section that is tapered, with a base that is somewhat smaller in diameter than a shoulder portion." D's Construction at 18 (internal quotation marks omitted). Defendant adds, however, that the interior contour of the bottle is also tapered such that the thickness of the sidewall at the shoulder is approximately 50% of the thickness of the sidewall at the base. |
| Thickened Base | Defendant agrees with Plaintiff's description on page 7 of its Preliminary Response of the base of the '197 Patent bottle design, namely that "the bottle includes an interior contour that is opposite the concave contour in the exterior of the base. These contours define a visibly thickened portion at the base of the bottle." *Id.* at 19 (internal quotation marks omitted). Defendant adds, however, its thickness must increase by a factor of 2.5 from the middle of the base to its edge. |
| Concave Bottom Surface | Defendant agrees with Plaintiff's description on page 7 of its Preliminary Response of the bottom surface of the '197 Patent bottle design, namely that "[t]he bottom surface of the base is contoured with a concave recess." *Id.* (internal quotation marks omitted). For clarity, Defendant adds that the interior of the base is also contoured with a concave recess. |
| Relative Proportions | Defendant agrees with Plaintiff's description on page 7 of its Preliminary Response of the relative proportions of the '197 Patent bottle design, namely that "the relative width and height |

|  | of the body section, the relative width of the body and neck sections, the relative height of the body to neck." *Id.* (internal quotation marks omitted). Defendant adds, however, that the relative height of the transfer ring to the height of the bottle, the thickness of the bottle, and the relative dimensions of the "Quarter-Round" and "Angular Transitions" are also elements of the claimed design. |
|---|---|
| Overall Visual Impression | The totality of the features of the '197 Patent bottle create an overall visual impression of an angular, light, and contemporary bottle design. |

D's Construction.

On September 9, 2015, this Court held a *Markman* hearing to discuss the parties' proposed claim constructions. Based on the *Markman* hearing and for the reasons set forth directly below, the Court adopts Plaintiff's proposed claim construction of the '197 Patent in its entirety.

## DISCUSSION

### I. Legal Standard

"Determining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim." *Hutzler Mfg. Co., Inc. v. Bradshaw Int'l, Inc.*, 11-CV-7211, 2012 WL 3031150, at *4 (S.D.N.Y. July 25, 2012) (Gardephe, J.) (internal quotation marks and citation omitted). "The second step in determining whether a design patent is infringed require[s] the fact-finder to compare the patented and accused designs to determine whether the accused design is substantially similar in appearance to the patented design." *Id.* at *5 (internal quotation marks and citation omitted). "In making that determination, courts utilize the 'ordinary observer' test[.]" *Id.*

At issue for purposes of this decision is the first step. "In construing a patent design claim [at step one], the focus is on overall appearance and the visual impression it creates." *Id.*

6

at *4 (internal quotation marks and citations omitted). "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Id.* (internal quotation marks and citations omitted). The Federal Circuit has made clear that, in construing design patents, district courts generally should forego verbal description:

> Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design.

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). Instead, "[a]s a rule the illustration in the drawing views is its own best description." *Hutzler Mfg. Co., Inc.*, 2012 WL 3031150 at *5 (internal quotation marks and citation omitted). "Accordingly, district courts following *Egyptian Goddess* have generally relied on patent drawings to construe design claims." *Id.* (internal quotation marks and citations omitted); *see also Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 326-27 (S.D.N.Y. 2002) (Connor, J.) ("When construing a design patent, the process of claim construction must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words. Design patents are limited to what is shown in the application drawings and are narrow in scope. Because a design patent only protects the novel, ornamental aspects of the design as shown in the patent, a court must identify these aspects in order to construe the scope of protection of the patent.") (internal quotation marks and citations omitted). With these legal standards in mind, the Court will turn to the claim construction analysis.

## II.     Analysis - Claim Construction of the '197 Patent

Here, to construe the '197 Patent, Defendant has proposed ten design features with detailed verbal descriptions. *See supra* at Background. However, as *Egyptian Goddess* and

7

other Federal Circuit authority have made clear, district courts should forego verbal descriptions and rely on patent drawings when construing design claims. *See Egyptian Goddess, Inc.*, 543 F.3d at 679; *Metrokane, Inc.*, 185 F. Supp. 2d at 326-27.

Defendant raises a variety of arguments as to why this Court should adopt its proposed claim construction for the '197 Patent and depart from the standard set forth in *Egyptian Goddess*, but all fail. First, Defendant argues a narrow and detailed description is necessary given the issues Defendant has raised with the '197 Patent being invalid in light of prior art. Def. Brief at 6-7. Specifically, Defendant claims because "the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* at 7 (internal citations omitted). However, Defendant's argument misses the point. For purposes of this decision, the Court is only concerned with step one: claim construction. Defendant's argument relating to what is "likely important to the eye of the hypothetical ordinary observer" only pertains to step two: determining whether the accused design is substantially similar in appearance to the patented design. *See Hutzler Mfg. Co., Inc.*, 2012 WL 3031150 at *4-6.

Second, Defendant attempts to use Plaintiff's Preliminary Response to Defendant's Petition for IPR Review to argue Plaintiff has previously acknowledged a verbal description is necessary. According to Defendant, "[Plaintiff] should not be permitted in this proceeding to disregard the verbal description of the claim used in its IPR Preliminary Response to attempt to distinguish it from the prior art." Def. Brief at 10. However, again, Defendant's argument misses the point because it relies on a determination that occurs at step two of determining design patent infringement, not at step one relating to claim construction. *See, e.g., Hutzler Mfg. Co., Inc.*, 2012 WL 3031150 at *4-6. Moreover, in its Preliminary Response to Defendant's

Petition for IPR Review, Plaintiff made clear the verbal descriptions it was providing to the PTO were *not* for purposes of claim construction, but were to be used to help assist the PTO "with a verbal framework for comparing and contrasting the patented design to the prior art[.]" Pl.'s Brief at 8. Again, this process occurs at step two of determining design patent infringement, not at step one relating to claim construction.

Accordingly, without more, the Court adopts Plaintiff's proposed claim construction because "the claims articulated in [the '197 Patent] are unambiguous and are clearly illustrated by the figures contained therein." *Hutzler Mfg. Co., Inc.*, 2012 WL 3031150 at *5 (internal quotation marks and citations omitted). "In accordance with *Egyptian Goddess*, 543 F.3d at 679, this Court will not provide a detailed verbal description of the ['197 Design Patent] and will rely instead on the illustrations set out [therein]." *Id.* The Court construes Plaintiff's '197 Patent claim as follows:

> The '197 patent is directed to the ornamental design of a bottle as illustrated in FIGS. 1-7. Oblique lines shown on the surfaces of the bottle in FIGS. 1-7 represent shading and contour lines, not surface ornamentation.

*See* '197 Design Patent at Figs. 1-7.

## CONCLUSION

The Court hereby construes the '197 Patent as described above. The parties shall proceed in this litigation in a manner consistent with this decision.

<u>**SO ORDERED**</u>

Dated: Brooklyn, New York
September 10, 2015

/s/ WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

9